EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jesús Bones Cruz<br>Peticionario<br><br>v.<br><br>Hon. Ismael L. Purcell Soler,<br>Registrador del a Propiedad de<br>Guayama<br>Recurrido | 2016 TSPR 44<br><br>194 DPR ____ |

Número del Caso: RG-2015-7

Fecha: 9 de marzo de 2016

Abogado de la parte Peticionaria:

       Lcdo. Ángel L. Montañez Morales

Registro de la Propiedad
Sección de Guayama:

       Lcdo. Ismael L. Purcell Soler
       Registrador de la Propiedad

Materia: Incumplimiento Contractual y Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jesus Bones Cruz

    Peticionario

      v.

                          RG-2015-0007

Hon. Ismael L. Purcell Soler, Registrador de la Propiedad de Guayama

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 9 de marzo de 2016.

Comparece Jesús Bones Cruz (en adelante, "peticionario") y nos solicita que revoquemos una recalificación realizada por el Registrador de la Propiedad de la Sección de Guayama, Hon. Ismael L. Purcell Soler. En esta, el Registrador denegó la anotación del derecho a hogar seguro solicitado por el peticionario al amparo de la Ley Núm. 195-2011, conocida como "Ley de Protección del Hogar", 31 L.P.R.A. secs. 1858-1858k, toda vez que uno de los cotitulares de la propiedad no autorizó el Acta Notarial mediante la cual se le requirió la inscripción del derecho de hogar seguro.

Evaluados los autos así como los alegatos de ambas partes, resolvemos que el Registrador de la Propiedad actuó conforme a lo resuelto por este Tribunal en <u>Rivera García v. Registradora</u>, 189 DPR 628 (2013), por lo cual procede confirmar la calificación del Registrador de la Propiedad.

A continuación exponemos el marco fáctico que dio génesis a la controversia de autos.

I

Los hechos de este caso son sencillos. El peticionario reside en un inmueble sito en el municipio de Arroyo. Según consta en el Registro, dicho inmueble pertenece en proporción de cincuenta por ciento (50%) al peticionario y a la Sra. Alicia Figueroa Rosa (en adelante, "Figueroa Rosa").

Así las cosas, el peticionario le requirió al notario público Ángel Luis Montañez Morales que autorizara un Acta Notarial para que se anotara en el Registro de la Propiedad su derecho a hogar seguro conforme con la Ley Núm. 195, *supra*. El Acta Notarial fue otorgada el 3 de marzo de 2012, mediante la Escritura Número Quince (15), intitulada "Acta para Anotar Derecho a Hogar Seguro" (en adelante, "Acta Notarial" o Escritura Núm. 15).[1]

---

[1] La propiedad inmueble sobre la cual el peticionario reclamó el derecho a hogar seguro está descrita en la Escritura Número Quince (15) de la siguiente forma:

El 19 de diciembre de 2013 se presentó el Acta Notarial en el Registro de la Propiedad, Sección de Guayama.[2] Luego de la correspondiente calificación, el Registrador denegó la inscripción de la Escritura Núm. 15 y el 8 de octubre de 2015 notificó al notario presentante, licenciado Montañez Morales, las siguientes faltas:

> Según el Registro la finca consta inscrita a favor de Alicia Figueroa Rosa y Jesús Bones Cruz, solteros, en una proporción de 50% cada uno, por lo que ambos titulares deben comparecer a consentir la transacción.

> Cuando la propiedad tiene m[á]s de un titular todos tienen que comparecer a la autorización del Acta Notarial en la que se reclama el Derecho de Hogar Seguro. Art. 9 [L]ey 195, 31 L[P]RA secci[ones] 1858-1858[k]. Antonia Rivera [v.] Namyr I. Hernández Sánchez[,] 2013 T[S]PR 107. (Art. 68 Ley Hipotecaria).

Insatisfecho con el proceder del Registrador, el 22 de octubre de 2015, el peticionario presentó a través de su representación legal un "Escrito de Recalificación". En resumen, adujo que la Ley Núm. 195-2011, *supra*, provee un derecho de hogar seguro para todo individuo domiciliado en

---

Rústica: Parcela de terreno identificada con el numero D cuat[r]o (D-4) en el plano de inscripción de Villas de Arroyo, radicada en el Barrio Ancones del término municipal de Arroyo, Puerto Rico[,] con una cabida superficial de cuatrocientos ochenta punto veinte[ú]n (480.21) metros cuadrados, en lindes por el norte con parcela identificada n[ú]mero "D" tr[e]s (D-3) por el sur con canal de riego de Autoridad de Energ[í]a El[é]ctrica de Puerto Rico, por el [é]ste con calle n[ú]mero uno (#1)[,] por el oeste con parcela identificada n[ú]mero "D" -ocho (D-8).--------------------------------------------

-----Consta inscrita al asiento 70, diario 434.----------

--Enclava una estructura dedicada a vivienda de dos (2) plantas[.] [E]n la planta baja consta de sala-comedor-cocina y un baño y en la planta alta tres (3) cuartos dormitorios y dos (2) baños.

[2] Presentada al asiento 445, Diario de Operaciones 656 del Registro de la Propiedad, Sección de Guayama.

Puerto Rico. Asimismo, arguyó que la postura del Registrador carecía de méritos toda vez que la solicitud de inscripción del derecho de hogar seguro no implicaba una pérdida, traslación de dominio o cambio de participación de la titularidad del inmueble y, en consecuencia, no se requiere consentimiento de todos los titulares. Como fundamento a su solicitud de recalificación citó la *derogada* Ley Núm. 87 de 12 de marzo de 1936, conocida como "Ley para Establecer el Derecho de Hogar Seguro" y el principio de equidad.

El 10 de diciembre de 2015 el Registrador de la Propiedad denegó el Escrito de Recalificación presentado por el peticionario. Sostuvo que el derecho a hogar seguro se rige por la Ley Núm. 195, *supra*, y es en ese estatuto que se establecen las formas en que los propietarios pueden reclamar su derecho a hogar seguro. Dispuso, además, que de acuerdo con el Artículo 9 de la Ley Núm. 195, *supra*, y las expresiones de este Tribunal en <u>Rivera García v. Registradora</u>, supra, era necesario que todos los cotitulares de un bien inmueble autorizaran el Acta Notarial en la cual se reclamó el derecho de hogar seguro.

Inconforme con la determinación final del Registrador de la Propiedad, el 28 de diciembre de 2015 el peticionario presentó el *Recurso Gubernativo*[3] de autos y

---

[3] Conjuntamente con el *Recurso Gubernativo*, el peticionario presentó la "Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción". Argumentó allí que es imprescindible que este Tribunal

alegó que el Registrador de la Propiedad cometió el error siguiente:

> Cometió error el Registrador de la Propiedad, Sala de Guayama en su calificación y recalificación de la escritura sobre Hogar Seguro al requerir la firma de la Sra. Alicia Figueroa Rosa.

Con el beneficio de la comparecencia del Registrador de la Propiedad, estamos en posición de resolver sin ulterior trámite.

## II

El derecho a hogar seguro no es otra cosa que una limitación a lo dispuesto en el Art. 1811 del Código Civil en cuanto a que "[d]el cumplimiento de las obligaciones responde el deudor con todos sus bienes presentes y futuros". 31 LPRA sec. 5171. Rivera García v. Registradora, supra, pág. 39. Esa limitación tradicionalmente se tradujo en una cuantía de dinero que estaría exenta de ser embargada por los acreedores.

Sin embargo, mediante la Ley Núm. 195, *supra*, la Asamblea Legislativa cambió ese paradigma convirtiendo el derecho de hogar seguro en una protección al disfrute de un bien inmueble específico, dejando atrás la protección

---

emita una Orden dirigida al Registrador de la Propiedad, con el propósito de impedirle que inscriba cualquier documento en la finca en la que desea que se inscriba el derecho de hogar seguro. Según el peticionario, ello es necesario para evitar causarle daño y que pueda hacer efectiva la decisión que emita este Tribunal.

de una cantidad de dinero no sujeta a embargo.[4] Véase, Rivera García v. Registradora, supra.

Así pues, mediante la Ley Núm. 195, *supra*, la Asamblea Legislativa creó el derecho de hogar seguro como un derecho personal con trascendencia real, por lo que es inscribible en el Registro de la Propiedad. De un lado, el derecho a hogar seguro tiene un efecto real toda vez que protege la finca misma. *Id.*, pág. 639. A su vez, crea un efecto *erga omnes* "ya que el derecho a hogar seguro remueve del tráfico comercial la propiedad protegida, quedando así fuera del alcance de los acreedores, con excepción de aquellos dispuestos en el Artículo 4 de la Ley Núm. 195, *supra*. 31 LPRA sec. 1858a.

El Artículo 9 de la Ley Núm. 195, *supra*, establece dos (2) maneras en que los propietarios pueden reclamar el derecho de hogar seguro. En primer lugar, la persona puede reclamarlo en el mismo acto de adquisición del título del bien inmueble. En segundo lugar, en aquellos casos en los que la finca esté inscrita a nombre del titular en el Registro de la Propiedad, el estatuto dispone, en lo pertinente, lo siguiente:

> En los casos donde la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que el propietario o **propietarios** de la finca otorgue(n) un acta ante notario público, donde se haga constar que la

---

[4] Como cuestión de Derecho, mediante la Ley Núm. 195, *supra*, la Asamblea Legislativa derogó la Ley Núm. 87 de 13 de mayo de 1936, según enmendada, conocida como "Ley para Establecer el Derecho a Hogar Seguro". Véase, Art. 16 de la Ley 195, *supra*.

finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente.

31 LPRA sec. 1858f. (Énfasis suplido).

En Rivera García v. Registradora, supra, este Tribunal precisamente interpretó el artículo antes citado. En esa ocasión la peticionaria presentó al Registro de la Propiedad un acta de hogar seguro a ser anotada en la finca donde se encontraba su hogar conyugal. Esta finca pertenecía a la comunidad de herederos de su fenecido esposo, cuyos comuneros consistían en sus hijos y la peticionaria. La Registradora de la Propiedad denegó la inscripción del acta notarial aduciendo que los coherederos y cotitulares debían todos consentir a la constitución del derecho a hogar seguro. Razonó que el consentimiento expreso de los coherederos era necesario toda vez que estos perderían el derecho a solicitarlo en sus respectivas propiedades de conformidad con el Artículo 10 de la Ley Núm. 195, supra, 31 LPRA sec. 1858g.

En efecto, ante esos hechos, resolvimos que el Artículo 9 de la Ley Núm. 195, supra, "exige que cuando una propiedad tiene más de un titular registral, todos tienen que comparecer a la autorización del acta notarial en la que se reclama el derecho a hogar seguro". Rivera García v. Registradora, supra, pág. 641.

III

En el presente caso, es un hecho incontrovertido que la propiedad que el peticionario pretendió proteger con el derecho a hogar seguro consta inscrita a nombre del peticionario y de la señora Figueroa Rosa, ambos como solteros, en proporción de cincuenta por ciento (50%). Sin embargo, el peticionario compareció individualmente a la autorización del Acta Notarial en la que requirió que se anotara su derecho de hogar seguro. Por tal razón, el Registrador de la Propiedad concluyó correctamente que el Acta Notarial no cumplió con los requisitos estatutarios establecidos en la Ley Núm. 195, *supra*, para la inscripción del derecho de hogar seguro en el Registro de la Propiedad.

Tal y como resolvimos en <u>Rivera García v. Registradora</u>, supra, cuando una propiedad pertenece a más de un titular registral, es necesario que todos los cotitulares comparezcan a la autorización del acta notarial en la que se reclama el derecho a hogar seguro. *Id*, págs. 642-643. Así pues, en este caso era necesario que la señora Figueroa Rosa compareciera y autorizara el Acta Notarial cuya calificación se revisa en el presente caso.

Ante dicha realidad jurídica, el peticionario argumenta que no le es posible obtener el consentimiento de la señora Figueroa Rosa toda vez que ella lo

"abandonó". *Recurso Gubernativo*, pág. 6. Aduce que "le indicaron que ella se había trasladado a los Estados Unidos de Norteamérica…". *Id*. Sin embargo, el propio peticionario admite que estos "datos **no le constan de propio conocimiento** por lo que no puede dar fe de ello". *Id*. (Énfasis suplido).

Basta simplemente señalar que hemos reiterado que en esta jurisdicción "meras alegaciones no constituyen prueba". U.P.R. Aguadilla v. Lorenzo Hernández, 184 D.P.R. 1001, 1013 (2012); Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485, 509-510 (2011); Alberty v. Bco. Gub. de Fomento, 149 D.P.R. 655, 671 (1999). Además, este asunto no fue planteado en el Escrito de Recalificación, por lo que sus méritos tampoco pueden ser revisados por este Tribunal. *Véase*, Art. 77 de la Ley Núm. 198 de 8 de agosto de 1979, conocida como "Ley Hipotecaria y del Registro de la Propiedad", 30 LPRA sec. 2270 (en adelante, "Ley Hipotecaria")(El recurso gubernativo "no podrá incluir objeciones a la calificación del documento… que no hubiese incluido al radicar su escrito solicitando recalificación").

Por otro lado, el peticionario arguye que la inscripción de su derecho a hogar seguro no requiere el consentimiento de la señora Figueroa Rosa toda vez que ello "no implica una pérdida o traslación del dominio ni altera el título de la propiedad del 50% indiviso que

posee la Sra. Alicia Figueroa Rosa… y lo único que hace es proteger a una familia que tiene una legítima necesidad". *Recurso Gubernativo*, págs. 4 y 7. Según el peticionario, esta postura es más afín con los propósitos de la Ley Núm. 195, *supra*, ya que facilita extender el derecho al cónyuge supérstite y sus herederos.

En Rivera García v. Registradora, supra, la peticionaria argumentó de manera similar que no existía objeción alguna que los cotitulares pudieran anteponer en contra de la inscripción del derecho de hogar seguro. *Id*., pág. 633. Sin embargo, resolvimos expresamente que a pesar de que el derecho reconocido en la Ley Núm. 195, *supra*, es amplio y abarcador, este *no constituye un mero acto de administración*. *Id*., págs. 641-642. Por el contrario, [s]e trata de un derecho que en cierto sentido remueve a la propiedad del tráfico jurídico cuando se trate del cobro exclusivamente de *deudas*". *Id*. Cabe reiterar que es el Artículo 9 de la Ley Núm. 195, *supra*, que exige que todos los cotitulares de una propiedad autoricen la inscripción del derecho a hogar seguro en el Registro de la Propiedad.[5] De esa forma el Registrador de la Propiedad en este caso

---

[5] No obstante, en Rivera García v. Registradora, supra, expresamos que en casos en los que no existe

> evidencia del consenso entre los comuneros para reconocer el derecho a hogar seguro de uno de ellos, siempre se puede acudir al tribunal con el propósito de que se reconozca el derecho a hogar seguro al amparo del Art. 3 de la Ley Núm. 195-2011, *supra*, y se ordene su anotación en el Registro de la Propiedad. *Id*., pág. 642.

cumplió con el mandato del Derecho Positivo encarnado en la propia Ley Núm. 195, *supra*.

Por último, el peticionario arguye que su postura es afín con los propósitos generales que sirvieron como base para la Ley Núm. 195, *supra*. En específico, sostiene que el propósito de la referida legislación es que cada ciudadano cuente con una protección básica contra el riesgo de ejecución. Véase, *Recurso Gubernativo*, pág. 5.

Sin embargo, es suficiente remitir al peticionario a los principios generales de interpretación y aplicación estatutaria dispuestos en el título preliminar de nuestro Código Civil. El Artículo 14 del Código Civil dispone que cuando la ley es clara, "la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". 31 LPRA sec. 14. Cordero v. ARPe, 187 DPR 445, 456 (2012); Bomberos Unidos v. Cuerpo de Bomberos et al., 180 D.P.R. 723, 750 (2011), citando a Pueblo v. Castro Muñiz, 118 D.P.R. 625, 650 (1987). Es precisamente la acción *vedada* en esa disposición legal la cual el peticionario nos invita a realizar. En consecuencia, carece de mérito el planteamiento del peticionario.[6]

---

[6] El peticionario sostiene, además, que este Tribunal debe revocar lo resuelto en Rivera García v. Registradora, *supra*, ello a base de ciertas enmiendas que se pretendieron realizar a la Ley Núm. 95, *supra*, mediante el Proyecto de la Cámara 1638, radicado el 23 de enero de 2014 en la Decimoséptima Asamblea Legislativa, Cuarta Sesión Ordinaria; y el Informe rendido por la Comisión de lo Jurídico ante dicho cuerpo legislativo, fechado el 11 de noviembre de 2014.

No obstante, este planteamiento tampoco fue levantado en el Escrito de Recalificación. Véase, Art. 77 de la Ley Hipotecaria, 30 LPRA sec.

Por todo lo anterior, colegimos que era necesaria la comparecencia y autorización de la señora Figueroa Rosa al Acta Notarial mediante la cual el peticionario requirió que se anotara el derecho de hogar seguro en el Registro de la Propiedad. En consecuencia, actuó correctamente el Registrador de la Propiedad y no se cometió el error señalado.[7]

IV

De acuerdo con los fundamentos expuestos anteriormente, se confirma la determinación del Registrador de la Propiedad Sección de Guayama, la cual denegó la inscripción del derecho a hogar seguro del peticionario, reclamado en la Escritura Núm. 15 intitulada

---

2280. Además, si bien es cierto que la Asamblea Legislativa tiene amplios poderes para aprobar y enmendar leyes, la realidad es que el P. de la C. 1638 **no ha sido aprobado** por la Asamblea Legislativa.

[7] Asimismo carece de mérito la *Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción* presentada por el peticionario. Mediante la referida Moción el peticionario nos solicita que expidamos una orden para prohibirle al Registrador de la Propiedad, Sección de Guayama, llevar a cabo su deber ministerial de calificar e inscribir cualquier documento que fuese presentado en la finca en cuestión, hasta tanto este Tribunal resuelva el *Recurso Gubernativo* presentado en autos.

Sin embargo, la realidad es que la Orden solicitada es innecesaria toda vez que uno de los efectos de la denegatoria de la recalificación es que el Registrador de la Propiedad deberá realizar una "anotación preventiva sobre la finca afectada, en la cual expresará los motivos legales para tal anotación, que deberán ser los mismos contenidos en la notificación de la calificación". Art. 71 de la Ley Hipotecaria, *supra*, 30 LPRA sec. 2274. Véase, Art. 77 de la Ley Hipotecaria, *supra* (En el término de cinco días a partir de la notificación de *Recurso Gubernativo*, el Registrador tomará nota de su interposición al margen de la anotación preventiva de denegatoria).

Cabe señalar que la vigencia del asiento de presentación o de la anotación preventiva queda automáticamente "prorrogada hasta la resolución definitiva del asunto por parte del Tribunal Supremo…". L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 2da ed., San Juan, Jurídica Editores, 2002, pág. 323. Véanse, Arts. 83.2-83.5 y 84.3 del *Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad*, según enmendado, Reglamento Núm. 2674, Departamento de Estado, 9 de julio de 1980. Véase además, <u>SLG Pérez Rivera v. Registradora</u>, 189 DPR 729 (2013).

"Acta para Anotar Derecho a Hogar Seguro", otorgada el 3 de marzo de 2012 ante el notario Ángel Luis Montañez Morales. Asimismo, se deniega la *Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción*.

Así lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo.  La Jueza Presidenta Oronoz Rodríguez disiente con Opinión escrita.


                         Juan Ernesto Dávila Rivera
                         Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jesús Bones Cruz

    Peticionario

             v.

Hon. Ismael L. Purcell Soler,
Registrador de la Propiedad      RG-2015-7
Guayama

    Recurrido


Opinión Disidente emitida por la Jueza Presidenta Oronoz Rodríguez


En San Juan, Puerto Rico, a 9 de marzo de 2016.

La Mayoría de este Tribunal ha decidido reiterar en este caso la norma errada establecida en _Rivera García v. Registradora_, 189 DPR 628 (2013). Al así hacerlo, desaprovechamos la oportunidad de corregir el curso tomado en dicho caso y atemperar nuestra jurisprudencia a la verdadera intención legislativa y política pública de la Ley Núm. 195-2011, 31 LPRA secs. 1858-1858k. Esto es, garantizar que toda persona, jefe o jefa de familia domiciliado en Puerto Rico obtenga una protección que cobije la posesión y el disfrute de su residencia principal contra el riesgo de

perderla como consecuencia de una sentencia en su contra para obtener el cobro de una deuda. Por entender que la Ley Núm. 195-2011, supra, no requiere que todos los copropietarios de un inmueble comparezcan al otorgamiento del acta de hogar seguro para lograr su inscripción en el Registro de  la Propiedad, disiento.

## I.

Los hechos de esta controversia resultan fáciles de exponer. El Sr. Jesús Bones Cruz otorgó la Escritura Pública Núm. 15 de 3 de marzo de 2012 ante el notario público Ángel Luis Montañez Morales. En la misma, hizo constar su deseo de constituir su derecho a hogar seguro sobre una propiedad compuesta por una estructura de dos pisos utilizada como vivienda, la cual ubica en el Barrio Ancones, en el Municipio de Arroyo.[8] Según consta en la minuta de presentación del Diario de Operaciones del Registro de la Propiedad, dicha Escritura Pública se presentó al Registro de la Propiedad, Sección de Guayama, el 19 de diciembre de 2013.

Calificado el documento, el Hon. Ismael L. Purcell Soler, Registrador de la Propiedad, notificó las siguientes faltas: "Según el Registro la finca consta inscrita a favor de Alicia Figueroa Rosa y Jesús Bones Cruz, solteros, en una porción de 50% cada uno, por lo que ambos titulares deben comparecer a consentir la

---

[8] Apéndice, págs. 2-3.

transacción".[9] El Registrador fundamentó su denegatoria en el hecho de que la finca constaba inscrita a favor de más de un propietario y todos tenían "que comparecer a la autorización del Acta Notarial en la que se reclama el Derecho de Hogar Seguro".[10]

Inconforme con esta determinación, el señor Bones Cruz presentó un escrito de recalificación. Argumentó que el derecho a hogar seguro establecido por la Ley Núm. 195-2011, supra, era de carácter *sui generis*, por lo que la copropietaria no podía objetar la inscripción de dicho derecho a favor del recurrente y que su participación en el bien inmueble no se veía afectada. Además, señaló que la inscripción del derecho a hogar seguro no representaba una pérdida o transferencia de dominio ni alteraba el título de propiedad de la codueña. No obstante, el Registrador denegó la recalificación solicitada.

Así las cosas, el señor Bones Cruz presentó el Recurso Gubernativo de epígrafe. Señaló que erró el Registrador al negarse a recalificar el documento presentado y requerir el consentimiento de la copropietaria para inscribir su derecho a hogar seguro. Atendido el recurso, decidimos expedir.[11]

---

[9] Apéndice, pág. 5.
[10] Íd.
[11] En su comparecencia ante este Tribunal, el señor Bones Cruz señaló por primera vez que su excompañera, cotitular de la propiedad en controversia, se mudó a Estados Unidos y que se le ha hecho imposible dar con su paradero.

II.

El legislador puertorriqueño ha reconocido el derecho a la vivienda como uno de carácter fundamental para nuestro Pueblo, el cual debe estar revestido de la mayor protección posible. Así, desde temprano en el Siglo XX el legislador estableció por la vía estatutaria mayores garantías para la propiedad residencial de las personas, de manera tal que en caso de un embargo y posterior venta judicial de la propiedad, cierta cantidad de dinero quedara protegida de los acreedores.[12]

Este esquema, sin embargo, cambió con la aprobación de la Ley Núm. 195-2011, supra, conocida como la "Ley del Derecho a la Protección al Hogar Principal y el Hogar Familiar" (Ley de Protección del Hogar). Tal y como reconocimos en Rivera García v. Registradora, supra, la nueva legislación no se enfocó en proteger cierta cantidad de dinero, sino que estableció disposiciones dirigidas a proteger la propiedad física del titular o los titulares. Rivera García v. Registradora, supra, a la pág. 636. Como reconoció la Asamblea Legislativa, para el puertorriqueño el hogar o residencia principal constituye una aspiración personal de primer orden y, en muchos de los casos,

---

[12] En 1903 la Asamblea Legislativa aprobó la "Ley para definir el Hogar Seguro y para Extentarlo [sic] de una Venta Forzosa", la cual protegía la cantidad de $500 de cualquier potencial embargo y posterior venta judicial de la propiedad que un demandado utilizara como vivienda. Posteriormente la Asamblea Legislativa aprobó la Ley Núm. 87 de 3 de mayo de 1936, la cual derogó la anterior legislación y estableció una protección de hasta $1,500 sobre la propiedad a ejecutarse. La cantidad a ser protegida de un potencial embargo y venta judicial no fue alterada hasta el año 2003, cuando la Asamblea Legislativa aprobó la Ley Núm. 116-2003 y estableció la cantidad de $15,000 como hogar seguro. 31 LPRA secs. 1851-1857 [Derogadas].

representa casi la totalidad de su patrimonio y el principal bien que pueden ofrecer a sus herederos.[13]

La Ley de Protección del Hogar crea un derecho sustantivo a favor de todo individuo, jefe o jefa de familia, a poseer y disfrutar, en concepto de hogar seguro, de una propiedad que consista de un predio de terreno y la estructura enclavada en éste, o una residencia bajo el Régimen de Propiedad Horizontal. Ello, siempre que dicha propiedad le pertenezca legalmente y sea utilizada por esa persona o por su familia exclusivamente como residencia principal. 31 LPRA sec. 1858. Esta protección del hogar o domicilio principal será efectiva en contra de cualquier embargo, sentencia o ejecución ejercitada para el pago de todas las deudas excepto de aquellas específicamente establecidas en la Ley. 31 LPRA sec. 1858b. El derecho a hogar seguro que establece la Ley Núm. 195-2011 no depende de la inscripción registral para su efectividad, puesto que es un derecho sustantivo creado por legislación a favor del individuo. Así se reconoce en la propia ley al establecer que "[e]l hecho de que una finca no esté inscrita en el Registro de la Propiedad o que el derecho a hogar seguro no esté inscrito o anotado en el Registro de la Propiedad, en nada afecta el derecho de hogar seguro que en ella tenga su propietario, siempre y cuando el derecho sea levantado oportunamente…". 31 LPRA sec. 1858h. Lo anterior significa que la inscripción del

---

[13] "Así, la protección del hogar es de gran importancia para todos en Puerto Rico, desde el joven que con tanto anhelo compra su primera propiedad hasta el individuo retirado, que tanto luchó para mantener su propiedad". 2011 Leyes de Puerto Rico 2231. Exposición de Motivos.

derecho a hogar seguro en el Registro de la Propiedad es simplemente declarativa y no de carácter constitutivo, como lo sería en el caso de una hipoteca.[14]

Lo anterior es de suma importancia al analizar la controversia pues, como señala el Prof. Michel Godreau, "[e]s principio registral que si el derecho sustantivo es claro, lo relativo a su inscripción tiene que ajustarse". M.J. Godreau Robles, Derechos Reales, Análisis del Término 2013-2014, 84 Rev. Jur. U.P.R. 709, 716 (2015). Respecto al proceso de inscripción del derecho a hogar seguro, la Ley de Protección del Hogar establece en su Art. 9 dos vías para completarlo. En primer lugar, el o los adquirentes de una propiedad pueden hacer constar en la escritura de compraventa su deseo de constituir sobre la propiedad adquirida su derecho a hogar seguro y el Registrador así lo anotará en el folio que corresponda. La segunda vía de inscripción ocurre cuando la propiedad sobre la que se quiere constituir el derecho a hogar seguro ya consta inscrita a favor del o los titulares. En ese caso, "bastará que el propietario o propietarios de la finca otorgue(n) un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad consigne tal

---

[14] Tal y como explica el tratadista Luis R. Rivera Rivera, "[e]n Puerto Rico la inscripción es declarativa en la mayoría de los casos, pues los derechos reales sobre inmuebles se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del registro en virtud de las normas del Derecho civil". L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra Edición, Puerto Rico, Jurídica Editores, 2012, pág. 42.

carácter en una nota marginal de la inscripción correspondiente". 31 LPRA sec. 1858f.

Amparados en el lenguaje anterior, la Mayoría en Rivera García v. Registradora, supra, estableció que la Ley de Protección del Hogar exige que cuando una propiedad tenga más de un titular registral, todos tienen que comparecer a la autorización del acta notarial en la que se reclama el derecho a hogar seguro. Rivera García v. Registradora, supra, pág. 641. Dicha determinación, sin embargo, parte de dos errores fundamentales que es preciso aclarar. Primero, en Rivera García v. Registradora, supra, la Mayoría del Tribunal estableció que el derecho a hogar seguro es un derecho personal que, una vez tiene acceso al Registro de la Propiedad, "adquiere una dimensión real y otra erga omnes". Íd., pág. 639. Es por esta razón, según el razonamiento mayoritario, que era preciso requerir que comparezcan todos los titulares al otorgamiento del acta de hogar seguro toda vez que "el derecho que reconoció la Asamblea Legislativa (...) es amplio y abarcador y tiene efectos de carácter real en cuanto a la propiedad. Se trata de un derecho que en cierto sentido remueve a la propiedad del tráfico jurídico cuando se trate del cobro exclusivamente de deudas". Íd., pág. 641. Asimismo, el segundo error que cometió la Mayoría en Rivera García v. Registradora, supra, fue caracterizar la inscripción del derecho de hogar seguro como un acto de dominio o alteración que requiere la comparecencia de todos los titulares de la propiedad. Íd., pág. 642.

Resulta equivocado establecer que la naturaleza real o *erga omnes* del derecho reconocido por la Ley Núm. 195-2011, surge una vez éste tiene acceso al Registro de la Propiedad. Como vimos, la inscripción del derecho a hogar seguro es meramente declarativa. La protección especial que le quiso conceder el legislador a la residencia principal del individuo es lo que hace que este tenga transcendencia real y *erga omnes*, y no su acceso al Registro. *Véase*, M.J. Godreau Robles, Un esquema para el análisis de problemas de derecho civil patrimonial, 55 Rev. Jur. U.P.R. 9 (1986). Así, que el bien inmueble sujeto al derecho a hogar seguro esté fuera del tráfico comercial para el cobro de toda deuda no contemplada en la Ley 195-2001 es una consecuencia de la propia legislación. Se trata de la protección que le quiso otorgar el legislador a la residencia principal de todo individuo, por lo que no depende de si el derecho está inscrito para tener transcendencia real. Esto ocurre sin importar que, en el caso de una propiedad ya inscrita a nombre de más de un titular, sólo uno de los titulares solicite la inscripción de su derecho a hogar seguro sobre dicha propiedad. Como vimos, el derecho al hogar seguro es de carácter sustantivo, por lo que su efectividad no está atada al aspecto procesal de su inscripción en el Registro de la Propiedad.

Por otro lado, a diferencia del criterio mayoritario en Rivera García v. Registradora, supra, la inscripción del derecho a hogar seguro por parte de un comunero

constituye un acto de conservación y no un acto de dominio o alteración a la cosa.[15] Los actos de conservación son aquellos necesarios para que la cosa no se deteriore ni perezca, y aquellos dirigidos a mantener la utilidad y productividad de la cosa común, procurando que ésta permanezca al servicio del destino que se le asignó. *Véase*, Asociación de Residentes Urb. Sagrado Corazón, Inc. v. Arsuaga Álvarez, 160 DPR 289, 309 (2003), citando a M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1985, T. V, Vol. II, pág. 106.[16]

Asimismo, hemos establecido que para realizar actos de conservación sobre la cosa común un comunero no necesita el consentimiento de los demás copartícipes, pero puede requerirles a éstos que contribuyan con los gastos. *Véase*, Cabera v. Morales, 57 DPR 457, 463 (1940); Art. 329 del Código Civil, 31 LPRA sec. 1274. *Además*, J.R. Vélez Torres, Curso de Derecho Civil, [sin ed.], San Juan, 1983, T. II, pág. 148. No hay duda que al inscribir el derecho a hogar seguro sobre una copropiedad, un comunero la protege de su posible embargo y ejecución en venta judicial, lo que implicaría la pérdida del inmueble. Al así hacerlo, la propiedad sujeta al derecho a hogar seguro seguirá

---

[15] En Rivera García v. Registradora, supra, existía una comunidad hereditaria a la cual por sus características *sui generis* no se le podían aplicar las normas existentes para una comunidad de bienes, tal y como hizo la Mayoría en dicho caso.

[16] El Prof. Godreau Robles llega a la misma conclusión al afirmar que "[n]o es un acto de alteración porque lo que se logra es la protección de la cosa en contra de los terceros que querían ejecutarla". Y más adelante añade: "...la inscripción del derecho a hogar seguro representa un acto de conservación, porque saca la finca de la posible pérdida que representaría la ejecución de la misma en cobro de deudas". *Ver*, M.J. Godreau Robles, Derechos Reales, supra, pág. 719. (Itálicas suprimidas).

destinada a su uso residencial -tal y como exige la Ley de Protección al Hogar- por lo que no se altera su naturaleza ni su destino. Además, al inscribir el comunero su derecho a hogar seguro sobre la propiedad en que reside, no está perjudicando el interés de la comunidad ni les impide a los demás copartícipes utilizarla según su derecho, tal y como exige el Art. 328 del Código Civil, 31 LPRA sec. 1273.

Como hemos visto, no existe justificación para requerir que todos los cotitulares comparezcan al otorgamiento del acta para que uno de ellos pueda inscribir su derecho a hogar seguro.[17] Esto es contrario a la intención legislativa de la Ley Núm. 195-2011, supra, y niega, so pretexto de un rigorismo procesal innecesario, un derecho sustantivo y de transcendencia real que fue concedido expresamente por legislación a todo individuo, jefe o jefa de familia. Lo único que requiere la Ley de Protección del Hogar es que la propiedad a ser afectada por el derecho a hogar seguro conste inscrita a nombre de la persona que desea inscribir sobre ella su derecho, que ésta sea la residencia principal del solicitante, y que no tenga inscrito su derecho a hogar seguro sobre otra propiedad. 31 LPRA sec. 1858f, ante.[18]  Por tanto, basta

---

[17] Valga señalar que el comunero que no comparezca al otorgamiento del acta de hogar seguro sobre la propiedad de la cual es codueño no solamente no se ve afectado, sino que de todos modos no podría solicitar para sí el derecho a hogar seguro sobre la propiedad, a menos que ésta sea su residencia principal.

[18] Como indicó la Juez Asociada señora Rodríguez Rodríguez en sus expresiones en Rivera García v. Registradora, supra, págs. 643-644, aún permanecen las interrogantes en torno a cómo se extenderá el derecho a hogar seguro ante una situación en que la propiedad esté inscrita a favor de más de un titular y sólo uno de ellos la haya reclamado como hogar seguro. Sin embargo, los hechos de este caso no

con que uno solo de ellos comparezca y solicite la inscripción de su derecho a hogar seguro sobre esa propiedad, siempre que cumpla con los demás requisitos señalados por la Ley.

## III.

En el caso ante nuestra consideración, el señor Bones Cruz compareció ante notario público para otorgar un acta de hogar seguro sobre su residencia principal, la cual constaba inscrita a su nombre y a nombre de la su excompañera, quien no compareció. El Registrador, aplicando la norma establecida en Rivera García v. Registradora, supra, denegó la inscripción. La Mayoría concluye que dicha decisión fue correcta ya que "[t]al y como resolvimos en Rivera García v. Registradora, supra, cuando una propiedad pertenece a más de un titular registral, es necesario que todos los cotitulares comparezcan a la autorización del acta notarial en la que se reclama el derecho a hogar seguro." [Cita omitida]. Sentencia, pág. 8. Difiero.

El recurrente cumple con todos los requisitos para establecer su derecho a hogar seguro. Primero, la propiedad está inscrita a su nombre en el Registro de la Propiedad. Segundo, la propiedad es su residencia principal. Por último, el señor Bones Cruz no tiene inscrito su derecho a hogar seguro sobre ninguna otra propiedad. El Art. 9 de la Ley de Protección al Hogar

---

son los apropiados para profundizar en cuanto a ello, toda vez que estamos ante una controversia relacionada a la inscripción del derecho y no con la ejecución de la propiedad.

permite la inscripción del derecho del señor Bones Cruz sin necesidad de que comparezca la cotitular. Concluir lo opuesto es ponerle trabas al reconocimiento del derecho sustantivo y de transcendencia real establecido en la Ley de Protección al Hogar, lo cual es contrario a nuestros principios registrales. En ninguna parte de la Ley se requiere la comparecencia de todos los cotitulares para inscribir el derecho a hogar seguro sobre la propiedad. Por el contrario, las normas de la comunidad de bienes establecen que, al tratarse de un acto de conservación de la propiedad, el señor Bones Cruz está facultado para realizarlo sin tener que procurar la intervención de la otra cotitular. De esta manera, se reconoce y adelanta la intención legislativa de proteger el derecho a la vivienda y hogar seguro del recurrente. Este derecho, valga recordar, existe en este momento a pesar de la denegatoria del Registrador de la Propiedad y de este Tribunal de permitir su inscripción. No es correcto, por lo tanto, insistir en la solución errada a la que llegamos en Rivera García v. Registradora, supra. Por el contrario, debemos corregir el curso y ajustar la balanza para favorecer el interés legítimo de un copropietario de proteger su propiedad, en la cual tiene su hogar y residencia principal y la de su familia. Esto, a pesar de que, por distintas razones, no pueda contar en ese momento con el consentimiento de los demás copropietarios. Como la Mayoría de este Tribunal insiste en aplicar una norma equivocada, disiento.

IV.

Por todo lo anterior, revocaría la determinación del Hon. Ismael L. Purcell Soler, Registrador de la Propiedad de la Sección de Guayama, y ordenaría la inscripción del derecho a hogar seguro sobre la finca del señor Jesús Bones Cruz. Esto por entender que no es necesaria la comparecencia de la cotitular al otorgamiento del acta de hogar seguro.

Maite D. Oronoz Rodríguez
Jueza Presidenta